J-S15004-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LUCINDA PRALL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LARRY PRALL | : | No. 1272 WDA 2024 |

Appeal from the Order Entered September 18, 2024
In the Court of Common Pleas of Potter County Civil Division at No(s):
No. 3259 of 2021

BEFORE:   OLSON, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                **FILED: May 21, 2025**

Appellant, Lucinda Prall ("Wife") appeals from the trial court's September 18, 2024 order, which resolved the equitable distribution claims between Wife and Larry Prall ("Husband"), awarded Wife alimony, and denied Wife's claims for counsel fees.[1]  We affirm.

The trial court ably summarized the underlying facts and procedural history of this case:

> This matter comes before the Court on the [Wife's] Complaint for Divorce, Equitable Distribution, Alimony and Counsel

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] This order was made final by the trial court's September 18, 2024 entry of a final decree in divorce.  **See** Trial Court Decree, 9/18/24, at 1; **see also Wilson v. Wilson**, 828 A.2d 376, 378 (Pa. Super. 2003) ("a pre-divorce decree distributing marital property is interlocutory.  . . . It cannot be reviewed until it has been rendered final by the entry of a decree in divorce").

Fees. At the time of the hearing, [Wife] was 59 years of age and resided in Punta Gorda, Florida. [Husband] is 73 years of age and lives with his daughter in Fairfield, Pennsylvania. The parties were married on August 2, 1986 and separated on April 23, 2021. Both parties had previously been married, this being their second marriage. [Wife] has an adult daughter from a previous relationship, whom Husband adopted, and the Husband has two other adult daughters from a previous relationship. They have no children together.

Wife's education and training includes being a licensed cosmetologist, an LPN and medical transcriptionist. Wife was employed with Giant Food Markets, which ended when she suffered an injury. She received a worker's compensation settlement from Giant in June 1998 in the amount of $47,500. Presently Wife's income consists of social security disability benefits of $1,125 a month but must purchase the Medicare benefit at $174.76 per month. Wife's net income is approximately $950 per month.

Wife received an inheritance from her mother's estate of $25,000 which was placed in an Edward Jones investment account on or about December 31, 2016. *See* Defendant's Exhibit 41. In the Edward Jones statement dated September 20, 2021 through October 29, 2021 the account value was $28,140. Wife claims that she has expended all of Edward Jones funds at this time; however, Wife presented no evidence indicating that the account has been depleted.

Wife has a myriad of medical issues, which are listed on Plaintiffs Exhibit A and avers that she is presently unable to work. Wife testified that she has unpaid medical bills in the amount of $7,578. She reports she is on numerous medications some of which are not covered by any insurance. Wife has had three back surgeries. Wife has Medicare parts A and B which she pays $174.76 per month.

Husband was employed with Tyco Electronics from December of 1968 through retirement in January of 1999 where he earned a pension. Thirteen years of his pension is deemed marital. Husband's monthly retirement benefit is $599.91. At the time of his retirement, Husband made an election to provide his Wife with a 100% irrevocable survivor benefit which would provide her with the same benefit of $599.91

upon his passing. This election meant that Husband received a reduced monthly benefit than if had made an election to give his Wife less than the 100% survivor benefit. According to QDRO GROUP evaluation contained in Defendant's Exhibit 34, and the testimony of the pension appraiser Lance Melin, the marital portion of the retirement benefit was valued at $29,061.96 with Wife's portion of her survivor benefit valued at $18,906.61. If Wife receives 50% of the marital portion of the retirement benefit without any offset of her survivorship benefit, she will receive $128.80 per month of Husband's monthly benefit of $599.91. Husband incurred expert fees in the amount of $1,700 in having the pension evaluation prepared and the expert Lance Melin testify.

Husband also receives social security benefits in the amount of $2,681.90 per month. Deducted from that benefit is the sum of $164.90 for Medicare insurance. He also pays approximately $270.00 for supplemental insurance and $41.00 for Part B benefit. Accordingly, after payment of Medicare and supplemental insurance Husband's net social security benefit is $2,206.00.

Husband takes ten medications as he has had health issues including a stroke in 2012 and is under the care of a vascular surgeon. He has one carotid artery.

The current spousal support order for Wife is dated October 18, 2023. In that Order Husband's Social Security and retirement were used in establishing the spousal support amount. The Order provided that spousal support should be $624.81[; however, this] was reduced to $306.55 with the understanding that Husband was paying marital obligations while Wife was residing in the camper.  . . .

The parties own a marital residence in Potter County and a seasonal residence in Florida. The Florida residence is a camper which was purchased on October 22, 2020 for $71,213. Wife contributed $ 10,000 from her inheritance money and the parties borrowed $66,247 from the Bank of the West with a monthly payment of $ 516.52. *See* Defendant's Exhibit G. Wife claims that Husband agreed to repay her the $10,000 she contributed to the purchase. The parties would spend the winters in the camper from October through March and the rest of the year at their residence in

Potter County. Wife testified that after the parties separated that she paid the lot rent and insurance on the camper for three years. Wife has had exclusive possession of the camper since the date of separation of April 23, 2021 while Husband continued to make the loan payment on the camper. Husband testified that Wife paid the lot rent for 2022 and 2023 and that he paid the insurance on the camper since July 2022.

The parties had attempted to sell the camper and as of the date of the opinion in this matter have an offer for $56,000, which is less than the payoff. By stipulation and Order of Court dated May 7, 2024, they had agreed to sell the camper for $57,000 and use some of the proceeds from the sale of the marital residence to pay any deficiency. As of March 1, 2024, the parties owed $60,831 to Bank of the West for the camper. *See* [Plaintiff's Exhibit H]. Previously, Husband had attempted to sell the camper and incurred advertising fees of $220. Husband continues to pay the loan on the camper until it is sold.

Wife claims that she vacated the camper on January 5, 2024[,] but still resides in the camper park with another individual without any expense or fee to her. Defendant's Exhibits 1 and 2 are photographs taken after January 5, 2024 and show the interior of the camper filled with personal property. When questioned whether she lives with Charles Walter, she testified that she never stays overnight with him and sleeps at another undisclosed location.

The parties owned a marital residence at 27 Watson Farm Road, Austin, Pennsylvania, which was sold on January 29, 2024. The net proceeds of $80,226.08 are being held in the escrow account of the closing attorney and will be distributed herein. *See* Exhibit Plaintiffs F-1.

The parties had a 2010 GMC pickup truck which Wife was in possession of when the parties separated. In violation of the Court's Order (to be discussed below), on or about July 2021 she traded in that vehicle for a credit of $7,500 and together with cash of $14,858.24 purchased a Buick Encore. *See* Plaintiff's Exhibit K.

Since separation Husband has solely paid the mortgage on the marital residence of $585.00 per month until the summer

of 2023. Husband also made the loan payment on the camper of $516.52 per month while Wife had exclusive possession of the camper and he has continued to pay that obligation. In the October 18, 2023 support Order which has been appealed the parties were to split the loan payment on the camper. It is unknown whether they have complied with that directive.

The parties have a joint Edward Jones investment account which [in] January 2024 had a balance of $4,630.37 and at this time is valued at $5,160. That fund was intended to be used to purchase a vehicle to replace their truck. Wife has incurred attorney fees of approximately $16,646.77 while Husband has incurred attorney fees of approximately $18,411.00. Husband testified that he had to borrow to pay his counsel fees while wife was required to use some of her Edward Jones account. Each obtained an appraisal of the marital residence. Husband incurred a fee of $400 for his appraisal and Wife incurred a similar fee.

Husband has a personal loan which was about $10,000 at the time of separation. He reports that $4,000 of said money was used for cosmetic surgery for his Wife. He claims that there was about $41,000 in Wife's Edward Jones account at the time of the purchase of the camper. Wife testified that Husband paid her $1,200 from his stimulus check as part of the repayment of her contribution to the purchase of the camper. The parties have a Discover Card in Wife's name which had balance at or near the date of separation of approximately $6,800.00. *See* Plaintiff's Exhibit N.

Wife claims that the impetus behind the parties separation on April 23, 2021 was that Husband had accumulated debt without her knowledge. At that time the parties were living in the camper in Florida. Wife claims that Husband borrowed $1,200 against her life insurance policy without her consent. He admits that there was a loan against her insurance policy and that the money was used to pay the lot rent where the camper was parked. Husband claims that the reason for the separation was because Wife had become violent with him and after a physical altercation on April 23, 2021 she left the camper in Florida and drove away in the parties' truck. Husband testified that during the altercation Wife said that she would ["fucking kill"] Husband. Husband provided the Court with photos suggesting that his Wife bruised his face

during the altercation and he testified that he sought medical treatment at a hospital in York County when he returned to Pennsylvania.

According to Husband when his Wife left the camper, she took his keys, his wallet; as well as his tools and equipment which were in the back of the pickup truck. Husband (and his friend who had been staying with the parties at the camper) retreated to a hotel and then eventually returned to Pennsylvania where Husband moved in with his daughter. Husband claims that he pays his daughter $400 per month in rent.

Husband has never recovered his wallet, keys or equipment to this day and in prior hearings, Wife denied she ever took the items. However, Wife's daughter, Kristy Briggs testified in an earlier proceeding that her mother was in possession of those items after the parties separated.

After separation Wife also returned to Pennsylvania and to the marital residence in Potter County and she exclusively resided there from May of 2021 through August 31, 2021. Wife claims that there was an electrical fire at the residence and so she called the electric company and requested that they remove the electric service box from the property. Wife presented photographs dated May 3, 2021 of a four wheeler and a lawn tractor in a shed on the property. She also has presented photos of items in the residence. Many of these items have come up missing since Wife was at the residence. No photos were presented to the Court which were taken near the time she left the premises in August. Wife claims she bought the four wheeler from her previous settlement; however Husband testified that they had two other four wheelers that they had bought with her settlement but that those had been sold before the subject four wheeler was purchased.

By Court Order dated December 2, 2021, Husband was given the right to return to the marital residence to make sure that it was winterized before cold weather ensued. Husband claims that he had been to the residence two times in 2021. On the first occasion he observed the four wheeler and lawn mower in the shed, but when he returned the second time after Wife had been at the residence, these items were

- 6 -

missing. Wife denies that she had anything to do with the removal of these items. However in Wife's sole Edward Jones account statement dated September 25 through October 29, 2021 (Defendant's Exhibit 41) there is a deposit into her account of $4,000 and one month later an additional deposit [of] $5,797.90 added to her account for a total of $9,797.90. Wife provided no testimony or evidence as to how she was able to accumulate these funds, however she has continually claimed that she had no source of income but for her social security and spousal support.

Wife has not been credible in this hearing and other proceedings. The Court believes that Wife removed and sold items from the residence and that these funds deposited into her Edward Jones account logically came from the sale of the items removed from the residence. Defendant Exhibit 29 indicates that the value of the missing lawn mower is $775 and Exhibit 31 establishes a value for the four wheeler at $3,500.

After Husband entered the residence he found that the roof needed repair and the electric had been disconnected. He made a claim to State Farm for repair of the roof and the insurance company issued a check in the amount of $1,983.05. *See* Defendant's Exhibit 15. He retained the service of Brumbach's Carpentry to repair the roof for $4,700. *See* Defendant's 17. On November 3, 2022, Husband borrowed $6,035.28 to cover the cost of repairs to the residence. *See* Defendant's Exhibit 18.

According to Husband when he returned to the house to make the repairs, the majority of the personal property in the residence had been removed. Defendant's Exhibit 20 indicates that ammunition, bear rugs, animal mounts, tools, clothing and many other items were gone. Husband values these items at $27,444.76, with $6,822 being premarital assets of his. *See* Defendant's Exhibit 20. The Court being the fact finder finds these figures to be inflated and determines that the value of the marital assets removed or destroyed [by] Wife to be $15,275 (including four wheeler and tractor) and value of Husband's premarital assets to be $4,000.

Husband did find some firearms owned by Wife's father and he gave them as well as a gun cabinet and antique desk to his Wife's daughter Kristy Briggs for delivery to Wife. Wife claims that there were numerous firearms at the residence while Husband claims there were six and which he had appraised. Husband provided an appraisal of six firearms. *See* Defendant's Exhibit 43. He claims that the last two on the list were premarital. The value of the four firearms which are marital is $2,350.

Wife has failed to comply with this [Court's] Order on several occasions and has not been credible in her testimony. To provide context and history, the Court has provided herewith the prior Findings and Orders in this matter:

On July 26, 2021, Husband filed a Petition for Special Relief and Contempt averring that Wife had failed to comply with the Court's Order of June 15, 2021 which was reached by an agreement of the parties and required that the assets be frozen. The matters were scheduled for a hearing on October 21, 2021. The following is an [excerpt] from the Court's Findings and Order in that matter:

1. This matter comes before the Court on [Husband's] Petition for Contempt/Petition for Special Relief against [Wife].

2. The parties were married on August 2, 1986 and separated on or about April 23, 2021.

3. By way of history, the parties reside at 27 Watson Farm Road, Coudersport, Potter County, Pennsylvania but would travel to Florida for part of the year.

4. While living seasonally in Florida, the parties would reside in a camper. Due the small size of the camper, they would store some of their items locked up in the back of their pickup. The pickup is a [2010] GMC Sierra which is titled in Wife's name but was purchased during the marriage and is a marital asset. It is the only vehicle the parties owned.

5. In April of 2021 the parties, and their friend, Clarence Confer were at the residence in Florida when Husband and

- 8 -

Wife engaged in an argument. Mr. Confer and Husband had items of personal property in the pickup truck. Wife retrieved Husband's wallet and drove off with the pickup truck containing the aforesaid property of Husband and Mr. Confer. Husband had requested of Wife that he be allowed to retrieve the personal property in the truck and requested the return of his wallet. Wife refused these requests.

6. Inside the bed of the truck [were] two suitcases of Mr. Confer which contained his clothing, hearing aids, mail and a military patch.

7. Also contained inside the bed of the truck were Husband's tools, Direct TV meter and clothing.

8. After the altercation between Husband and Wife on April 23, 2021, Husband and Mr. Confer fled the Florida residence and returned to Pennsylvania.

9. On June 3, 2021 Wife drove the pickup truck from Florida to the residence of the parties' daughter in Dover, Pennsylvania. At that time Wife left a message on Husband's phone that she was at the residence and wanted to deliver to him his property. Husband was not at the Dover residence at that time and his property was not left there by Wife.

10. The parties' daughter Kristy Briggs testified that she received a phone call from her mother on June 3, 2021 wherein her mother recounted that she was at the Dover residence and had with her the aforesaid suitcases and Husband's items from Florida. Wife advised Ms. Briggs that she was parked in a field and surveilling the residence with binoculars for several hours. Despite Ms. Briggs suggestion that Wife leave the items on the porch and depart the residence, Wife refused.

11. Ms. Briggs has seen her mother with father's wallet on several occasions including in May or June 2021 and testified that mother carries the wallet and Husband's documents with her at all times in a bag.

12. In May of 2021 Ms. Briggs was at the residence in Coudersport to visit with her mother and observed that the parties' four wheeler and lawnmower was present on the property. Ms. Briggs also observed that her mother had removed a storm door from the residence. Ms. Briggs believes that her mother has been "acting crazy" which is mother's new normal.

13. On June 15, 2021 a hearing was scheduled on Husband's Petition for Special Relief. At that time the parties entered into an agreement which was approved as an Order of Court that same day. At that time the Court directed that all assets of the parties would be "frozen and not removed, dissipated, sold, concealed in any fashion but for normal living expenses."

14. On or about July 9, 2021 Wife traded in the aforesaid pickup truck at the Shult's auto dealership in Olean, New York for $7,500.00 and purchased another vehicle in her own name. The pickup truck was not encumbered. By trading in the pickup truck, Wife violated the June 15, 2021 Order of Court.

15. Husband presented a recent photograph from Wife's Facebook account which appears to be a fire wherein photographs or documents are being burned. Husband believes that some of the items in the fire were from his wallet. He testified that inside his wallet was his driver's license, credit cards, insurance cards; as well as a medical notice card.

16. Husband recently drove past the residence and observed that the storm door was removed; decking from the porch was missing and there appeared to be leak on the roof. He also could not find the four wheeler and tractor that had been in the shed. Husband was advised that a truck bearing New York license plate recently retrieved the tractor and four wheeler from the residence. It is not known if these items were removed from the residence before or after the Court's June 15, 2021 Order.

17. Husband expressed concerns that Wife will soon be returning to Florida for the winter and the house could be left vacant and not winterized. He believes that

deterioration can already be seen from the missing storm door, missing decking and leak on the roof. He requests access to the residence to inspect and to arrange for winterization.

18. On or about September 23, 2021 Husband alerted his counsel that Wife was selling property and damaging the residence which prompted Husband's counsel to send an email to Wife's counsel that date requesting a telephone conference.

19. Husband has incurred counsel fees of $1,017.50 in pursuing these issues.

20. The Court finds by a preponderance of the evidence that [Wife] is in Contempt of Court and finds beyond a reasonable doubt that she can purge herself of contempt.

AND NOW, this 26th day of October 2021, the Court issues the following relief:

1. [Wife] is in Contempt of Court. She shall pay to [Husband] one half of the value of the pickup truck she traded in. Said one half is $3,750.00 and shall be paid to Husband within 30 days. If she fails to do so upon Praecipe filed by Petitioner's counsel the Court will convene a hearing to impose sanctions which may include incarceration.

2. [Wife] shall make available to Husband within 10 days, his wallet with the contents intact, his items from the pickup truck being his tools, meter and clothing; as well as the two suitcases and contents of Mr. Confer. If she fails to do so upon Praecipe filed by Petitioner's counsel the Court will convene a hearing to impose sanctions.

3. Husband shall with law enforcement or constable go to the marital property to engage in an inspection of the residence and to retrieve therefrom his personal items and effects including hunting and other personal clothing. Wife may remain at the residence but shall not interfere with Husband. Husband shall through his counsel notify Wife's counsel as to the date and time he will be coming to the residence and Wife shall fully cooperate.

4. Wife shall within 20 days disclose in writing all property she has removed, sold, hidden or otherwise disposed of since April 23, 2021 including the date, names of the recipients and funds received for said property. This disclose shall include all marital property she has burned or destroyed. If she fails to do so upon Praecipe filed by Petitioner's counsel the Court will convene a hearing to impose sanctions.

5. Wife shall pay to Husband counsel fees in the amount of $1,000.00 within 30 days. If she fails to do so upon Praecipe filed by Petitioner's counsel the Court will convene a hearing to impose sanctions.

6. The Court hereby reiterates and incorporates the Order of June 15, 2021 that no items of marital property shall be sold, encumbered, destroyed or otherwise disposed of.

When Wife failed to comply with the Court's Order of October 26, 2021, a further hearing to address her resistance was held before the Court on January 31, 2022. The following is an [excerpt] of the Court's Findings, Discussion and Order on that date:

On June 15, 2021[, Wife and Husband] were before the Court with their respective counsel on a Petition for Special Relief and after stipulation of the parties the Court granted the Wife exclusive possession of the marital residence. The Court also directed that all tangible and intangible assets be frozen and not be removed dissipated, sold, or concealed. The Court also Ordered the Wife to provide to the Husband an accounting of the assets that she had dissipated, sold, traded or removed from the residence. Thereafter Wife's counsel filed a motion to withdraw asserting reasons under the Rules of Professional Conduct and the Wife obtained new counsel.

Subsequently the Husband filed a Petition for Contempt/Petition for Special Relief. The Court convened a hearing on October 21, 2021 with the parties including Wife's new counsel. At that hearing the Court found that the Wife had willfully violated the Courts' Order of June 15, 2021 which froze the marital estate. Specifically the

Court found that the Wife traded in the marital vehicle, that she had failed to provide her Husband with his wallet and personal items she had in her possession; and failed to disclose the whereabouts of the marital personal property that was removed from the residence.

On October 26, 2021 the Court found the Wife in contempt and Ordered her to pay Husband one-half the value of the marital vehicle in the amount of $3,750.00 within 30 days. The Court also Ordered that Wife provide to Husband his wallet and personal effects within 10 days. The Court also directed that Husband have access to the marital residence to retrieve his clothing and hunting supplies. Additionally, the Court gave the Wife an additional 20 days to disclose to her Husband the whereabouts of the items removed or destroyed including a four wheeler and lawn tractor. Finally the Court Ordered the Wife to pay counsel fees to Husband of $1,000.00 within 30 days. The Court concluded with the statement that if the Wife did not comply with the Order of October 26, 2021 the Court would convene yet another hearing to impose sanction.

Thereafter Wife's second attorney filed a Motion to Withdraw alleging reasons under the Rules of Professional Conduct. At the hearing on November 12, 2021 on the Petition to Withdraw the Court relieved the attorney from representing the Wife. At the conclusion of that hearing Wife indicated that she would not participate further in any hearings and would not provide her address for purposes of receiving mailing.

Due to the Wife's noncompliance with the Court's Order of October 26, 2021 the Husband requested another hearing to discuss the imposition of sanctions upon Wife. In conjunction with a support hearing, the Court held a hearing on December 22, 2021 to address what further sanctions would be imposed upon the Wife. Since incarceration was being considered by the Court, counsel was appointed to represent the Wife in the sanction portion of the hearing.

At the December 22, 2021 hearing, Husband testified that when he went to the residence to retrieve his personal

- 13 -

property that all of his hunting clothes, dress clothes, winter clothing, several animal mounts, jewelry box and other personal property were gone. He claims that the items are valued at thousands of dollars. Husband testified that none of his Wife's personal property was missing.

He testified that Wife has not paid him the $3,750.00 being one half the value of the truck; did not disclose the location of or return his wallet and personal effects; or disclose the location of the four wheeler and lawn tractor. Neither had Wife paid the attorney fees she was ordered to pay. Husband testified that Wife has an Edward Jones investment account valued at approximately $30,000.00. Wife has borrowed against or used that money during the marriage.

The Wife testified that much of Husband's personal items in the home were destroyed by water damage and mold and that her friends helped her to remove and discard them. Some of the items she claims she dropped off at a neighbor's residence. Interestingly, the Wife testified that her own personal property remained safe in a secured bedroom. At a prior hearing evidence was offered which showed the Wife burning items at the residence.

She testified that she did not know the location of the four wheeler and lawn tractor which had been removed from the parties' shed. The Wife also testified that she did have her Husband's wallet but could not locate it now. The Wife has an investment account with Edward Jones containing approximately $28,000 to $30,000 but asserts that she will not give her Husband any money out of that account.

. . .

The Wife has engaged in a course of conduct of violating the Court's Order and has indicated that she will not participate in the proceedings. Clearly, she will not comply with any Court Orders. She has had her Husband's wallet and personal effects in her possession and according to her daughter who testified at a prior hearing, Wife secures these possession on her person at all times. Now the Wife suggests that she simply can't locate the

wallet and items. The Wife claims that Husband's personal properly was destroyed by mold and water and had to be discarded by her and her friends. At a prior hearing evidence was offered which showed the Wife burning items at the residence.

Although the Court ordered that all marital assets be preserved, the Wife traded in the marital vehicle and realized a credit of $7,500.00 for the vehicle. The Wife has the financial capacity to comply with the Court's Order that directed her to pay her Husband one half of [the] value of the truck being $3,750.00. She also has the ability to pay Husband's counsel fees of $1,000.00. Husband has requested additional attorney fees, which the Court will address at the time of the final divorce hearing.

The Court having issued Orders giving the Wife the opportunity to purge herself of contempt and has admonishing her to comply, still Wife refuses. Accordingly the Court will now issue sanctions which will enforce the Court's Order but again give the Wife an opportunity to purge herself of the Contempt.

[Order of February 15, 2022]

AND NOW, this 15th day of February 2022, the Wife, Lucinda Prall shall have 30 days to pay to her Husband, Larry Prall the sum of $3,750.00 for his share of the marital truck and an additional $1,000.00 in attorney fees for a total of $4,750.00. Payment shall be made through Husband's counsel.

If the Wife fails to pay said money, she shall be incarcerated for a period of 60 days or until she has made said payment whichever occurs first. If payment is not received within said 30 days, Wife shall turn herself in to the Potter County Sheriff to begin serving her incarceration. If Wife does not make said payment and fails to report to the Potter County Sheriff, a bench warrant will be issued for her arrest.

[Wife] again failed to comply with the Court's Order of February 15, 2022 and the Court scheduled yet another hearing to address Husband's Petition for Special Relief and Contempt as well as Wife's Motion for Special Relief and Contempt. All matters were scheduled for a hearing on July 14, 2022. The following is an [excerpt] from the Court's Findings, Discussion and Order:

On June 15, 2021[, Wife and Husband] were before the Court with their respective counsel on a Petition for Special Relief and after stipulation of the parties the Court granted the Wife exclusive possession of the marital residence. The Court also directed that all tangible and intangible assets be frozen and not be removed dissipated, sold, or concealed. The Court also Ordered the Wife to provide to the Husband an accounting of the assets that she had dissipated, sold, traded or removed from the residence. Thereafter Wife's counsel filed a motion to withdraw asserting reasons under the Rules of Professional Conduct and the Wife obtained new counsel.

Subsequently the Husband filed a Petition for Contempt/Petition for Special Relief. The Court convened a hearing on October 21, 2021 with the parties including Wife's new counsel. At that hearing the Court found that the Wife had willfully violated the Court's Order of June 15, 2021 which froze the marital estate. Specifically the Court found that the Wife traded in the marital vehicle, that she had failed to provide her Husband with his wallet and personal items she had in her possession; and failed to disclose the whereabouts of the marital personal property that was removed from the residence.

On October 26, 2021 the Court found the Wife in contempt and Ordered her to pay Husband one-half the value of the marital vehicle in the amount of $3,750.00 within 30 days. The Court also Ordered that Wife provide to Husband his wallet and personal effects within 10 days. The Court also directed that Husband have access to the marital residence to retrieve his clothing and hunting supplies. Additionally, the Court gave the Wife an additional 20 days to disclose to her Husband the whereabouts of the items removed or destroyed including a four wheeler and lawn tractor. Finally the Court

[ordered] the Wife to pay counsel fees to Husband of $1,000.00 within 30 days. The Court concluded with the statement that if the Wife did not comply with the Order of October 26, 2021 the Court would convene yet another hearing to impose sanction.

Thereafter Wife's second attorney filed a Motion to Withdraw alleging reasons under the Rules of Professional Conduct. At the hearing on November 12, 2021 on the Motion to Withdraw the Court relieved the attorney from representing the Wife. At the conclusion of that hearing Wife indicated that she would not participate further in any hearings and would not provide her address for purposes of receiving mailing.

Due to the Wife's noncompliance with the Court's Order of October 26, 2021 the Husband requested another hearing to discuss the imposition of sanctions upon Wife. In conjunction with a support hearing, the Court held a hearing on December 22, 2021 to address what further sanctions would be imposed upon the Wife. Since incarceration was being considered by the Court, counsel was appointed to represent the Wife in the sanction portion of the hearing.

At the December 22, 2021 hearing, Husband testified that when he went to the residence to retrieve his personal property that all of his hunting clothes, dress clothes, winter clothing, several animal mounts, jewelry box and other personal property were gone. He claims that the items are valued at thousands of dollars. Husband testified that none of his Wife's personal property was missing.

He testified that Wife has not paid him the $3,750.00 being one half the value of the truck; did not disclose the location of or return his wallet and personal effects; or disclose the location of the four wheeler and lawn tractor. Neither had Wife paid the attorney fees she was ordered to pay. Husband testified that Wife has an Edward Jones investment account valued at approximately $30,000.00. Wife has borrowed against or used that money during the marriage.

- 17 -

The Wife testified that much of Husband's personal items in the home were destroyed by water damage and mold and that her friends helped her to remove and discard them. Some of the items she claims she dropped off at a neighbors residence. Interestingly, the Wife testified that her own personal property remained safe in a secured bedroom. She testified that she did not know the location of the four wheeler and lawn tractor which had been removed from the parties' shed. The Wife also testified that she did have her Husband's wallet and can't locate it now. The Wife has an investment account with Edward Jones containing approximately $28,000 to $30,000 but asserts that she will not give her Husband any money out of that account.

. . .

The Wife has engaged in a course of conduct of violating the Court's Order and has indicated that she will not participate in the proceedings. Clearly, she will not comply with any Court Orders. She has had her Husband's wallet and personal effects in her possession and according to her daughter who testified at a prior hearing, Wife secures these possession on her person at all times. Now the Wife suggests that she simply can't locate the wallet and items. The Wife claims that Husband's personal properly was destroyed by mold and water and had to be discarded by her and her friends. At a prior hearing evidence was offered which showed the Wife burning items at the residence.

Although the Court ordered that all marital assets be preserved, the Wife traded in the marital vehicle and realized a credit of $7,500.00 for the vehicle. The Wife has the financial capacity to comply with the Court's Order that directed her to pay her Husband one half of value of the truck being $3,750.00. She also has the ability to pay Husband's counsel fees of $1,000.00. Husband has requested additional attorney fees, which the Court will address at the time of the final divorce hearing.

The Court having issued Orders giving the Wife the opportunity to purge herself of contempt and has admonishing her to comply, still Wife refuses. Accordingly

the Court will now issue sanctions which will enforce the Court's Order but again give the Wife an opportunity to purge herself of the Contempt.

. . .

On February 24, 2023, Wife finally paid the $4,750 through her present counsel.

Trial Court Opinion, 9/18/24, at 1-16.

As to the claims of equitable distribution, alimony, and counsel fees, the

trial court ordered the following:

Equitable distribution of assets and liabilities:

Except as set forth hereafter, each party shall retain all personal property in his/her name or in his/her possession and shall be solely responsible for any loan or obligation associated with or secured by the said personal property.

The total marital assets are approximately $103,011.80 excluding Husband's retirement account. Included in the total marital asset figure are the items Wife sold, destroyed or otherwise disposed of which were situated at the marital residence valued at $11,000 and the four wheeler and the lawn tractor valued at $4,272. Wife also disposed of $4,000 of Husband's premarital personal property. Wife will be held accountable for these amounts in the equitable distribution award. The Court will direct that $5,500 be withheld from the proceeds from the sale of the residence of $80,226.08 to pay any shortfall due for the sale of the camper which sale is approved at $56,000. This will leave $74,726.00 held in Attorney Larsen's escrow account available for immediate distribution. Husband shall fully exercise control over the trailer to ensure that it is sold and should Wife refuse to execute any closing documents or title, he may execute the documents in her stead.

The Court divides the assets with Wife receiving approximately 55% and Husband receiving approximately 45%. After the camper is sold any remaining proceeds will be

distributed in the same percentages. The division of assets and debts is as follows:

Since Wife has disposed of the aforementioned marital property inside the residence as well as the four wheeler and tractor totaling $15,275 she will be accountable for these items and will pay Husband 45% of their value or the sum or $6,873.75. She will also be accountable for entirety of Husband's premarital assets she destroyed valued at $4,000.00. Accordingly Wife owes to Husband for his portion of the marital assets and his premarital assets the total sum of $10,873.75.

Wife will retain the jointly owed Edward Jones account valued at approximately $5,160.37 and Husband shall retain his firearms valued at $2,350.00.

As to the marital debt totaling $24,378.83 Wife shall be responsible for 45% or $10,970.47 while Husband is responsible for 55% or $13,408.56. Accordingly, Husband will be solely responsible for his $10,000 personal loan and shall pay to Wife $3,408.56. Wife shall be solely responsible for her Discover Card of $6,800 and her medical bills of $7,578.53.

Accordingly, Attorney Patrick Larsen is directed to distribute from his escrow account the real estate proceeds of $74,726.00 as follows:

To Wife 55%:
$41,009.30 (gross amount due)
- $ 10,873.75 (husband's share of missing marital and premarital property)
+ $3,408.56 (husband's share of marital debt owed to wife)
$33,634.11 (net amount due wife)

To Husband 45%:
$33,626.70 (gross amount due)
+ $ 10,873.75 (husband's share of missing marital and premarital items)
- $ 3,408.56 (husband's share of marital debt)
$41,091.89 (net amount due husband)

As to that marital portion of the Husband's Tyco Electronic Pension Plan . . . Wife shall receive 55% of the marital portion of Husband's monthly benefit, together with any costs of living increases. The Court did not consider Wife's survivorship benefit value which could have reduced this benefit. Husband's attorney shall ensure that an QDRO is prepared to disburse the benefit to Wife with the costs equally shared between the parties.

The parties will execute any and all documents, titles and the like to effectuate the provisions of this agreement.

The parties will indemnify, defend and hold the other harmless from any claims made against the other party for indebtedness to be assumed hereunder.

Alimony:

Alimony will be awarded to Wife in the sum of $300.00 per month for two years which shall terminate in the event of Wife's death, cohabitation with a member of the opposite sex, or remarriage. The first payment will be due 30 days from today's date. In determining the amount of alimony the Court did not consider in the calculation any portion of the Husband's retirement benefit. Spousal/APL has been addressed under a separate Order and will be deemed terminated effective this date after all arrears have been paid by Husband.

Counsel fees, costs and expenses:

Due to the minimal assets and income as discussed above, there will be no award to either party for counsel fees, costs or expenses.

Trial Court Order, 9/18/24, at 22-24.

Wife filed a timely notice of appeal from the trial court's September 18, 2024 order. She raises seven issues to this Court:

1. Did the Trial Court err in failing to consider the factors of alimony set forth in 23 Pa.C.S.A. § 3701(b) and failing to award Wife permanent alimony?

- 21 -

2. Did the Trial Court abuse its discretion or err as a matter of law in denying Wife an award of attorney's fees?

3. Did the Trial Court err as a matter of law or commit an abuse of discretion in distributing the marital property considering the factors of equitable distribution set forth in 23 Pa.C.S.A. § 3502?

4. Did the Trial Court err in calculating Wife's alimony award in the sum of $300.00 per month taking into account Husband's income and Wife's income?

5. Did the Trial Court err as a matter of law or commit an abuse of discretion in failing to account for the assets which remained in Husband's control in the amount totaling $22,176.00?

6. Did the Trial Court err as a matter of law or commit an abuse of discretion in not awarding Wife credit for the $10,000.00 of her inheritance she used towards the camper?

7. Did the Trial Court err in not considering all of Wife's medical bills and her medical needs in the future?

Wife's Brief at 4-5.

We have reviewed the briefs of the parties, the relevant law, the certified record, and the opinion of the able trial court judge, the Honorable Stephen P.B. Minor. We conclude that Appellant is not entitled to relief in this case, for the reasons expressed in President Judge Minor's September 18, 2024 opinion and order. Therefore, we affirm on the basis of President Judge Minor's able opinion and order and adopt them as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of President Judge Minor's September 18, 2024 opinion and order.

Order affirmed. Jurisdiction relinquished. Husband's request for attorneys' fees under Pennsylvania Rule of Appellate Procedure 2744 denied.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

5/21/2025

Received 11/19/2024 10:20:13 PM Superior Court Western District

Filed 11/19/2024 10:20:13 PM Superior Court Western District
1272 WDA 2024

LUCINDA PRALL
       Plaintiff

        Vs.

LARRY PRALL
       Defendant

:IN THE COURT OF COMMON PLEAS
:OF POTTER COUNTY, PENNSYLVANIA
:
:No. 3529 of 2021
:
:CIVIL DIVISION –DIVORCE
:

## FINDINGS OF FACT, DISCUSSION AND ORDER

### FINDINGS OF FACT

This matter comes before the Court on the Plaintiff Lucinda Prall's Complaint for Divorce, Equitable Distribution, Alimony and Counsel Fees. At the time of the hearing, the Plaintiff, Lucinda Prall, (hereinafter sometimes referred to as "Wife") was 59 years of age and resided in Punta Gorda, Florida. The Defendant, Larry Prall, (hereinafter sometimes referred to as "Husband") is 73 years of age and lives with his daughter in Fairfield, Pennsylvania. The parties were married on August 2, 1986 and separated on April 23, 2021. Both parties had previously been married, this being their second marriage. The Plaintiff has an adult daughter from a previous relationship, whom Husband adopted, and the Husband has two other adult daughters from a previous relationship. They have no children together.

Wife's education and training includes being a licensed cosmetologist, an LPN and medical transcriptionist. Wife was employed with Giant Food Markets, which ended when she suffered an injury. She received a worker's compensation settlement from Giant in June 1998 in the amount of $47,500. Presently Wife's income consists of social security disability benefits of $1,125 a month but must purchase the Medicare benefit at $174.76 per month. Wife's net income is approximately $950 per month.

1

Wife received an inheritance from her mother's estate of $25,000 which was placed in an Edward Jones investment account on or about December 31, 2016. See Defendant's Exhibit 41. In the Edward Jones statement dated September 20, 2021 through October 29, 2021 the account value was $28,140. Wife claims that she has expended all of Edward Jones funds at this time; however, Wife presented no evidence indicating that the account has been depleted.

Wife has a myriad of medical issues, which are listed on Plaintiff's Exhibit A and avers that she is presently unable to work. Wife testified that she has unpaid medical bills in the amount of $7,578. She reports she is on numerous medications some of which are not covered by any insurance. Wife has had three back surgeries. Wife has Medicare parts A and B which she pays $174.76 per month.

Husband was employed with Tyco Electronics from December of 1968 through retirement in January of 1999 where he earned a pension. Thirteen years of his pension is deemed marital. Husband's monthly retirement benefit is $599.91. At the time of his retirement, Husband made an election to provide his Wife with a 100% irrevocable survivor benefit which would provide her with the same benefit of $599.91 upon his passing. This election meant that Husband received a reduced monthly benefit than if had made an election to give his Wife less than the 100% survivor benefit. According to QDRO GROUP evaluation contained in Defendant's Exhibit 34, and the testimony of the pension appraiser Lance Melin, the marital portion of the retirement benefit was valued at $29,061.96 with Wife's portion of her survivor benefit valued at $18,906.61. If Wife receives 50% of the marital portion of the retirement benefit without any offset of her survivorship benefit, she will receive $128.80 per month of Husband's monthly benefit of

2

$599.91. Husband incurred expert fees in the amount of $1,700 in having the pension evaluation prepared and the expert Lance Melin testify.

Husband also receives social security benefits in the amount of $2,681.90 per month. Deducted from that benefit is the sum of $164.90 for Medicare insurance. He also pays approximately $270.00 for supplemental insurance and $41.00 for Part B benefit. Accordingly, after payment of Medicare and supplemental insurance Husband's net social security benefit is $2,206.00.

Husband takes ten medications as he has had health issues including a stroke in 2012 and is under the care of a vascular surgeon. He has one carotid artery.

The current spousal support order for Wife is dated October 18, 2023. In that Order Husband's Social Security and retirement were used in establishing the spousal support amount. The Order provided that spousal support should be $624.81 however, was reduced to $306.55 with the understanding that Husband was paying marital obligations while Wife was residing in the camper. There is an appeal from that Order which will be addressed in separate Order in the Domestic Relations Division at 12 of 2021.

The parties own a marital residence in Potter County and a seasonal residence in Florida. The Florida residence is a camper which was purchased on October 22, 2020 for $71,213. Wife contributed $10,000 from her inheritance money and the parties borrowed $66,247 from the Bank of the West with a monthly payment of $516.52. See Defendant's Exhibit G. Wife claims that Husband agreed to repay her the $10,000 she contributed to the purchase. The parties would spend the winters in the camper from October through March and the rest of the year at their residence in Potter County. Wife testified that after the

3

parties separated that she paid the lot rent and insurance on the camper for three years. Wife has had exclusive possession of the camper since the date of separation of April 23, 2021 while Husband continued to make the loan payment on the camper. Husband testified that Wife paid the lot rent for 2022 and 2023 and that he paid the insurance on the camper since July 2022.

The parties had attempted to sell the camper and as of the date of the opinion in this matter have an offer for $56,000, which is less than the payoff. By stipulation and Order of Court dated May 7, 2024, they had agreed to sell the camper for $57,000 and use some of the proceeds from the sale of the marital residence to pay any deficiency. As of March 1, 2024, the parties owed $60,831 to Bank of the West for the camper. See Plaintiff's Exhibit H. Previously, Husband had attempted to sell the camper and incurred advertising fees of $220. Husband continues to pay the loan on the camper until it is sold.

Wife claims that she vacated the camper on January 5, 2024; but still resides in the camper park with another individual without any expense or fee to her. Defendant's Exhibits 1 and 2 are photographs taken after January 5, 2024 and show the interior of the camper filled with personal property. When questioned whether she lives with Charles Walter, she testified that she never stays overnight with him and sleeps at another undisclosed location.

The parties owned a marital residence at 27 Watson Farm Road, Austin, Pennsylvania, which was sold on January 29, 2024. The net proceeds of $80,226.08 are being held in the escrow account of the closing attorney and will be distributed herein. See Exhibit Plaintiff's F-1.

The parties had a 2010 GMC pickup truck which Wife was in possession of when

4

the parties separated. In violation of the Court's Order (to be discussed below), on or about July 2021 she traded in that vehicle for a credit of $7,500 and together with cash of $14,858.24 purchased a Buick Encore. See Plaintiff's Exhibit K.

Since separation Husband has solely paid the mortgage on the marital residence of $585.00 per month until the summer of 2023. Husband also made the loan payment on the camper of $516.52 per month while Wife had exclusive possession of the camper and he has continued to pay that obligation. In the October 18, 2023 support Order which has been appealed the parties were to split the loan payment on the camper. It is unknown whether they have complied with that directive.

The parties have a joint Edward Jones investment account which on January 2024 had a balance of $4,630.37 and at this time is valued at $5,160. That fund was intended to be used to purchase a vehicle to replace their truck. Wife has incurred attorney fees of approximately $16,646.77 while Husband has incurred attorney fees of approximately $18,411.00. Husband testified that he had to borrow to pay his counsel fees while wife was required to use some of her Edward Jones account. Each obtained an appraisal of the marital residence. Husband incurred a fee of $400 for his appraisal and Wife incurred a similar fee.

Husband has a personal loan which was about $10,000 at the time of separation. He reports that $4,000 of said money was used for cosmetic surgery for his Wife. He claims that there was about $41,000 in Wife's Edward Jones account at the time of the purchase of the camper. Wife testified that Husband paid her $1,200 from his stimulus check as part of the repayment of her contribution to the purchase of the camper. The parties have a Discover Card in Wife's name which had balance at or near the date of separation of approximately $6,800.00. See Plaintiff's Exhibit N.

Wife claims that the impetus behind the parties separation on April 23, 2021 was that Husband had accumulated debt without her knowledge. At that time the parties were living in the camper in Florida. Wife claims that Husband borrowed $1,200 against her life insurance policy without her consent. He admits that there was a loan against her insurance policy and that the money was used to pay the lot rent where the camper was parked. Husband claims that the reason for the separation was because Wife had become violent with him and after a physical altercation on April 23, 2021 she left the camper in Florida and drove away in the parties' truck. Husband testified that during the altercation Wife said that she would *fucking kill* Husband. Husband provided the Court with photos suggesting that his Wife bruised his face during the altercation and he testified that he sought medical treatment at a hospital in York County when he returned to Pennsylvania.

According to Husband when his Wife left the camper, she took his keys, his wallet; as well as his tools and equipment which were in the back of the pickup truck. Husband (and his friend who had been staying with the parties at the camper) retreated to a hotel and then eventually returned to Pennsylvania where Husband moved in with his daughter. Husband claims that he pays his daughter $400 per month in rent.

Husband has never recovered his wallet, keys or equipment to this day and in prior hearings, Wife denied she ever took the items. However, Wife's daughter, Kristy Briggs testified in an earlier proceeding that her mother was in possession of those items after the parties separated.

After separation Wife also returned to Pennsylvania and to the marital residence in Potter County and she exclusively resided there from May of 2021 through August 31,

6

2021. Wife claims that there was an electrical fire at the residence and so she called the electric company and requested that they remove the electric service box from the property. Wife presented photographs dated May 3, 2021 of a four wheeler and a lawn tractor in a shed on the property. She also has presented photos of items in the residence. Many of these items have come up missing since Wife was at the residence. No photos were presented to the Court which were taken near the time she left the premises in August. Wife claims she bought the four wheeler from her previous settlement; however Husband testified that they had two other four wheelers that they had bought with her settlement but that those had been sold before the subject four wheeler was purchased.

By Court Order dated December 2, 2021, Husband was given the right to return to the marital residence to make sure that it was winterized before cold weather ensued. Husband claims that he had been to the residence two times in 2021. On the first occasion he observed the four wheeler and lawn mower in the shed, but when he returned the second time after Wife had been at the residence, these items were missing. Wife denies that she had anything to do with the removal of these items. However in Wife's sole Edward Jones account statement dated September 25 through October 29, 2021 (Defendant's Exhibit 41) there is a deposit into her account of $4,000 and one month later an additional deposit $5,797.90 added to her account for a total of $9,797.90. Wife provided no testimony or evidence as to how she was able to accumulate these funds, however she has continually claimed that she had no source of income but for her social security and spousal support.

Wife has not been credible in this hearing and other proceedings. The Court believes that Wife removed and sold items from the residence and that these funds deposited into her Edward Jones account logically came from the sale of the items removed from the residence.

7

Defendant Exhibit 29 indicates that the value of the missing lawn mower is $775 and Exhibit 31 establishes a value for the four wheeler at $3,500.

After Husband entered the residence he found that the roof needed repair and the electric had been disconnected. He made a claim to State Farm for repair of the roof and the insurance company issued a check in the amount of $1,983.05. See Defendant's Exhibit 15. He retained the service of Brumbach's Carpentry to repair the roof for $4,700. See Defendant's 17. On November 3, 2022, Husband borrowed $6,035.28 to cover the cost of repairs to the residence. See Defendant's Exhibit 18.

According to Husband when he returned to the house to make the repairs, the majority of the personal property in the residence had been removed. Defendant's Exhibit 20 indicates that ammunition, bear rugs, animal mounts, tools, clothing and many other items were gone. Husband values these items at $27,444.76, with $6,822 being premarital assets of his. See Defendant's Exhibit 20. The Court being the fact finder finds these figures to be inflated and determines that the value of the marital assets removed or destroyed to be Wife to be $15,275 (including four wheeler and tractor) and value of Husband's premarital assets to be $4,000.

Husband did find some firearms owned by Wife's father and he gave them as well as a gun cabinet and antique desk to his Wife's daughter Kristy Briggs for delivery to Wife. Wife claims that there were numerous firearms at the residence while Husband claims there were six and which he had appraised. Husband provided an appraisal of six firearms. See Defendant's Exhibit 43. He claims that the last two on the list were premarital. The value of the four firearms which are marital is $2,350.

Wife has failed to comply with this Court' Order on several occasions and has

8

not been credible in her testimony. To provide context and history, the Court has provided herewith the prior Findings and Orders in this matter:

On July 26, 2021, Husband filed a Petition for Special Relief and Contempt averring that Wife had failed to comply with the Court's Order of June 15, 2021 which was reached by an agreement of the parties and required that the assets be frozen. The matters were scheduled for a hearing on October 21, 2021. The following is an exert from the Court's Findings and Order in that matter:

1. *This matter comes before the Court on the Petitioner Larry A. Prall's (hereafter sometimes referred to as "Husband") Petition for Contempt/Petition for Special Relief against his spouse, the Respondent, Lucinda Prall.*
2. *The parties were married on August 2, 1986 and separated on or about April 23, 2021.*
3. *By way of history, the parties reside at 27 Watson Farm Road, Coudersport, Potter County, Pennsylvania but would travel to Florida for part of the year.*
4. *While living seasonally in Florida, the parties would reside in a camper. Due the small size of the camper, they would store some of their items locked up in the back of their pickup. The pickup is a 2020 GMC Sierra which is titled in Wife's name but was purchased during the marriage and is a marital asset. It is the only vehicle the parties owned.*
5. *In April of 2021 the parties, and their friend, Clarence Confer were at the residence in Florida when Husband and Wife engaged in an argument. Mr. Confer and Husband had items of personal property in the pickup truck. Wife retrieved Husband's wallet and drove off with the pickup truck containing the aforesaid property of Husband and Mr. Confer. Husband had requested of Wife that he be allowed to retrieve the personal property in the truck and requested the return of his wallet. Wife refused these requests.*
6. *Inside the bed of the truck where two suitcases of Mr. Confer which contained his clothing, hearing aids, mail and a military patch.*
7. *Also contained inside the bed of the truck were Husband's tools, Direct TV meter and clothing.*
8. *After the altercation between Husband and Wife on April 23, 2021, Husband and Mr. Confer fled the Florida residence and returned to Pennsylvania.*
9. *On June 3, 2021 Wife drove the pickup truck from Florida to the residence of the parties' daughter in Dover, Pennsylvania. At that time Wife left a message on Husband's phone that she was at the residence and wanted to deliver to him his property. Husband was not at the Dover residence at that time and his property was not left there by Wife.*
10. *The parties' daughter Kristy Briggs testified that she received a phone call from her mother on June 3, 2021 wherein her mother recounted that she was at the Dover*

9

residence and had with her the aforesaid suitcases and Husband's items from Florida. Wife advised Ms. Briggs that she was parked in a field and surveilling the residence with binoculars for several hours. Despite Ms. Briggs suggestion that Wife leave the items on the porch and depart the residence, Wife refused.

11. Ms. Briggs has seen her mother with father's wallet on several occasions including in May or June 2021 and testified that mother carries the wallet and Husband's documents with her at all times in a bag.

12. In May of 2021 Ms. Briggs was at the residence in Coudersport to visit with her mother and observed that the parties' four wheeler and lawnmower was present on the property. Ms. Briggs also observed that her mother had removed a storm door from the residence. Ms. Briggs believes that her mother has been "acting crazy" which is mother's new normal.

13. On June 15, 2021 a hearing was scheduled on Husband's Petition for Special Relief. At that time the parties entered into an agreement which was approved as an Order of Court that same day. At that time the Court directed that all assets of the parties would be "frozen and not removed, dissipated, sold, concealed in any fashion but for normal living expenses."

14. On or about July 9, 2021 Wife traded in the aforesaid pickup truck at the Shult's auto dealership in Olean, New York for $7,500.00 and purchased another vehicle in her own name. The pickup truck was not encumbered. By trading in the pickup truck, Wife violated the June 15, 2021 Order of Court.

15. Husband presented a recent photograph from Wife's Facebook account which appears to be a fire wherein photographs or documents are being burned. Husband believes that some of the items in the fire were from his wallet. He testified that inside his wallet was his driver's license, credit cards, insurance cards; as well as a medical notice card.

16. Husband recently drove past the residence and observed that the storm door was removed; decking from the porch was missing and there appeared to be leak on the roof. He also could not find the four wheeler and tractor that had been in the shed. Husband was advised that a truck bearing New York license plate recently retrieved the tractor and four wheeler from the residence. It is not known if these items were removed from the residence before or after the Court's June 15, 2021 Order.

17. Husband expressed concerns that Wife will soon be returning to Florida for the winter and the house could be left vacant and not winterized. He believes that deterioration can already be seen from the missing storm door, missing decking and leak on the roof. He requests access to the residence to inspect and to arrange for winterization.

18. On or about September 23, 2021 Husband alerted his counsel that Wife was selling property and damaging the residence which prompted Husband's counsel to send an email to Wife's counsel that date requesting a telephone conference.

19. Husband has incurred counsel fees of $1,017.50 in pursuing these issues.

20. The Court finds by a preponderance of the evidence that Lucinda Prall is in Contempt of Court and finds beyond a reasonable doubt that she can purge herself of contempt.

*AND NOW,* this 26th day of October 2021, the Court issues the following relief:

10

*1. The Respondent Lucinda Prall is in Contempt of Court. She shall pay to Larry Prall one half of the value of the pickup truck she traded in. Said one half is $3,750.00 and shall be paid to Husband within 30 days. If she fails to do so upon Praecipe filed by Petitioner's counsel the Court will convene a hearing to impose sanctions which may include incarceration.*

*2. The Respondent Lucinda Prall shall make available to Husband within 10 days, his wallet with the contents intact, his items from the pickup truck being his tools, meter and clothing; as well as the two suitcases and contents of Mr. Confer. If she fails to do so upon Praecipe filed by Petitioner's counsel the Court will convene a hearing to impose sanctions.*

*3. Husband shall with law enforcement or constable go to the marital property to engage in an inspection of the residence and to retrieve therefrom his personal items and effects including hunting and other personal clothing. Wife may remain at the residence but shall not interfere with Husband. Husband shall through his counsel notify Wife's counsel as to the date and time he will be coming to the residence and Wife shall fully cooperate.*

*4. Wife shall within 20 days disclose in writing all property she has removed, sold, hidden or otherwise disposed of since April 23, 2021 including the date, names of the recipients and funds received for said property. This disclose shall include all marital property she has burned or destroyed. If she fails to do so upon Praecipe filed by Petitioner's counsel the Court will convene a hearing to impose sanctions.*

*5. Wife shall pay to Husband counsel fees in the amount of $1,000.00 within 30 days. If she fails to do so upon Praecipe filed by Petitioner's counsel the Court will convene a hearing to impose sanctions.*

*6. The Court hereby reiterates and incorporates the Order of June 15, 2021 that no items of marital property shall be sold, encumbered, destroyed or otherwise disposed of.*

When Wife failed to comply with the Court's Order of October 26, 2021, a further hearing to address her resistance was held before the Court on January 31, 2022. The following is an exert of the Court's Findings, Discussion and Order on that date:

*On June 15, 2021 the Plaintiff, Lucinda Prall (hereafter sometimes referred to as "Wife") and Defendant, Larry Prall (hereafter sometimes referred to as "Husband") were before the Court with their respective counsel on a Petition for Special Relief and after stipulation of the parties the Court granted the Wife exclusive possession of the marital residence. The Court also directed that all tangible and intangible assets be frozen and not be removed dissipated, sold, or concealed. The Court also Ordered the Wife to provide to the Husband an accounting of the assets that she had dissipated, sold, traded or removed from the residence. Thereafter Wife's counsel filed a motion to withdraw asserting reasons under the Rules of Professional Conduct and the Wife obtained new counsel.*

*Subsequently the Husband filed a Petition for Contempt/Petition for Special Relief. The Court convened a hearing on October 21, 2021 with the parties including Wife's new counsel. At that hearing the Court found that the Wife had willfully violated the Court's Order of June 15, 2021 which froze the marital estate. Specifically the Court found that the Wife traded in the marital vehicle, that she had failed to provide her Husband with his wallet and personal items she had in her possession; and failed to disclose the whereabouts of the marital personal property that was removed from the residence.*

*On October 26, 2021 the Court found the Wife in contempt and Ordered her to pay Husband one-half the value of the marital vehicle in the amount of $3,750.00 within 30 days. The Court also Ordered that Wife provide to Husband his wallet and personal effects within 10 days. The Court also directed that Husband have access to the marital residence to retrieve his clothing and hunting supplies. Additionally, the Court gave the Wife an additional 20 days to disclose to her Husband the whereabouts of the items removed or destroyed including a four wheeler and lawn tractor. Finally the Court Ordered the Wife to pay counsel fees to Husband of $1,000.00 within 30 days. The Court concluded with the statement that if the Wife did not comply with the Order of October 26, 2021 the Court would convene yet another hearing to impose sanction.*

*Thereafter Wife's second attorney filed a Motion to Withdraw alleging reasons under the Rules of Professional Conduct. At the hearing on November 12, 2021 on the Motion to Withdraw the Court relieved the attorney from representing the Wife. At the conclusion of that hearing Wife indicated that she would not participate further in any hearings and would not provide her address for purposes of receiving mailing.*

*Due to the Wife's noncompliance with the Court's Order of October 26, 2021 the Husband requested another hearing to discuss the imposition of sanctions upon Wife. In conjunction with a support hearing, the Court held a hearing on December 22, 2021 to address what further sanctions would be imposed upon the Wife. Since incarceration was being considered by the Court, counsel was appointed to represent the Wife in the sanction portion of the hearing.*

*At the December 22, 2021 hearing, Husband testified that when he went to the residence to retrieve his personal property that all of his hunting clothes, dress clothes, winter clothing, several animal mounts, jewelry box and other personal property were gone. He claims that the items are valued at thousands of dollars. Husband testified that none of his Wife's personal property was missing.*

*He testified that Wife has not paid him the $3,750.00 being one half the value of the truck; did not disclose the location of or return his wallet and personal effects; or disclose the location of the four wheeler and lawn tractor. Neither had Wife paid the attorney fees she was ordered to pay. Husband testified that Wife has an Edward Jones investment account valued at approximately $30,000.00. Wife has borrowed against or used that money during the marriage.*

12

*The Wife testified that much of Husband's personal items in the home were destroyed by water damage and mold and that her friends helped her to remove and discard them. Some of the items she claims she dropped off at a neighbor's residence. Interestingly, the Wife testified that her own personal property remained safe in a secured bedroom. At a prior hearing evidence was offered which showed the Wife burning items at the residence.*

*She testified that she did not know the location of the four wheeler and lawn tractor which had been removed from the parties' shed. The Wife also testified that she did have her Husband's wallet but could not locate it now. The Wife has an investment account with Edward Jones containing approximately $28,000 to $30,000 but asserts that she will not give her Husband any money out of that account.*

## DISCUSSION

*The Wife has engaged in a course of conduct of violating the Court's Order and has indicated that she will not participate in the proceedings. Clearly, she will not comply with any Court Orders. She has had her Husband's wallet and personal effects in her possession and according to her daughter who testified at a prior hearing, Wife secures these possession on her person at all times. Now the Wife suggests that she simply can't locate the wallet and items. The Wife claims that Husband's personal property was destroyed by mold and water and had to be discarded by her and her friends. At a prior hearing evidence was offered which showed the Wife burning items at the residence.*

*Although the Court ordered that all marital assets be preserved, the Wife traded in the marital vehicle and realized a credit of $7,500.00 for the vehicle. The Wife has the financial capacity to comply with the Court's Order that directed her to pay her Husband one half of value of the truck being $3,750.00. She also has the ability to pay Husband's counsel fees of $1,000.00. Husband has requested additional attorney fees, which the Court will address at the time of the final divorce hearing.*

*The Court having issued Orders giving the Wife the opportunity to purge herself of contempt and has admonishing her to comply, still Wife refuses. Accordingly the Court will now issue sanctions which will enforce the Court's Order but again give the Wife an opportunity to purge herself of the Contempt.*

## ORDER

*AND NOW, this 15th day of February 2022, the Wife, Lucinda Prall shall have 30 days to pay to her Husband, Larry Prall the sum of $3,750.00 for his share of the marital truck and an additional $1,000.00 in attorney fees for a total of $4,750.00. Payment shall be made through Husband's counsel.*

*If the Wife fails to pay said money, she shall be incarcerated for a period of 60 days or until she has made said payment whichever occurs first. If payment is not received within said 30 days, Wife shall turn herself in to the Potter County Sheriff to*

*begin serving her incarceration. If Wife does not make said payment and fails to report to the Potter County Sheriff, a bench warrant will be issued for her arrest.*

The Plaintiff again failed to comply with the Court's Order of February 15, 2022 and the Court scheduled yet another hearing to address Husband's Petition for Special Relief and Contempt as well as Wife's Motion for Special Relief and Contempt. All matters were scheduled for a hearing on July 14, 2022. The following is an exert from the Court's Findings, Discussion and Order:

*On June 15, 2021 the Plaintiff, Lucinda Prall (hereafter sometimes referred to as "Wife") and Defendant, Larry Prall (hereafter sometimes referred to as "Husband") were before the Court with their respective counsel on a Petition for Special Relief and after stipulation of the parties the Court granted the Wife exclusive possession of the marital residence. The Court also directed that all tangible and intangible assets be frozen and not be removed dissipated, sold, or concealed. The Court also Ordered the Wife to provide to the Husband an accounting of the assets that she had dissipated, sold, traded or removed from the residence. Thereafter Wife's counsel filed a motion to withdraw asserting reasons under the Rules of Professional Conduct and the Wife obtained new counsel.*

*Subsequently the Husband filed a Petition for Contempt/Petition for Special Relief. The Court convened a hearing on October 21, 2021 with the parties including Wife's new counsel. At that hearing the Court found that the Wife had willfully violated the Court's Order of June 15, 2021 which froze the marital estate. Specifically the Court found that the Wife traded in the marital vehicle, that she had failed to provide her Husband with his wallet and personal items she had in her possession; and failed to disclose the whereabouts of the marital personal property that was removed from the residence.*

*On October 26, 2021 the Court found the Wife in contempt and Ordered her to pay Husband one-half the value of the marital vehicle in the amount of $3,750.00 within 30 days. The Court also Ordered that Wife provide to Husband his wallet and personal effects within 10 days. The Court also directed that Husband have access to the marital residence to retrieve his clothing and hunting supplies. Additionally, the Court gave the Wife an additional 20 days to disclose to her Husband the whereabouts of the items removed or destroyed including a four wheeler and lawn tractor. Finally the Court Ordered the Wife to pay counsel fees to Husband of $1,000.00 within 30 days. The Court concluded with the statement that if the Wife did not comply with the Order of October 26, 2021 the Court would convene yet another hearing to impose sanction.*

*Thereafter Wife's second attorney filed a Motion to Withdraw alleging reasons under the Rules of Professional Conduct. At the hearing on November 12, 2021 on the*

14

*Motion to Withdraw the Court relieved the attorney from representing the Wife. At the conclusion of that hearing Wife indicated that she would not participate further in any hearings and would not provide her address for purposes of receiving mailing.*

*Due to the Wife's noncompliance with the Court's Order of October 26, 2021 the Husband requested another hearing to discuss the imposition of sanctions upon Wife. In conjunction with a support hearing, the Court held a hearing on December 22, 2021 to address what further sanctions would be imposed upon the Wife. Since incarceration was being considered by the Court, counsel was appointed to represent the Wife in the sanction portion of the hearing.*

*At the December 22, 2021 hearing, Husband testified that when he went to the residence to retrieve his personal property that all of his hunting clothes, dress clothes, winter clothing, several animal mounts, jewelry box and other personal property were gone. He claims that the items are valued at thousands of dollars. Husband testified that none of his Wife's personal property was missing.*

*He testified that Wife has not paid him the $3,750.00 being one half the value of the truck; did not disclose the location of or return his wallet and personal effects; or disclose the location of the four wheeler and lawn tractor. Neither had Wife paid the attorney fees she was ordered to pay. Husband testified that Wife has an Edward Jones investment account valued at approximately $30,000.00. Wife has borrowed against or used that money during the marriage.*

*The Wife testified that much of Husband's personal items in the home were destroyed by water damage and mold and that her friends helped her to remove and discard them. Some of the items she claims she dropped off at a neighbor's residence. Interestingly, the Wife testified that her own personal property remained safe in a secured bedroom. She testified that she did not know the location of the four wheeler and lawn tractor which had been removed from the parties' shed. The Wife also testified that she did have her Husband's wallet but can't locate it now. The Wife has an investment account with Edward Jones containing approximately $28,000 to $30,000 but asserts that she will not give her Husband any money out of that account.*

## DISCUSSION
*The Wife has engaged in a course of conduct of violating the Court's Order and has indicated that she will not participate in the proceedings. Clearly, she will not comply with any Court Orders. She has had her Husband's wallet and personal effects in her possession and according to her daughter who testified at a prior hearing, Wife secures these possession on her person at all times. Now the Wife suggests that she simply can't locate the wallet and items. The Wife claims that Husband's personal property was destroyed by mold and water and had to be discarded by her and her friends. At a prior hearing evidence was offered which showed the Wife burning items at the residence.*

15

*Although the Court ordered that all marital assets be preserved, the Wife traded in the marital vehicle and realized a credit of $7,500.00 for the vehicle. The Wife has the financial capacity to comply with the Court's Order that directed her to pay her Husband one half of value of the truck being $3,750.00. She also has the ability to pay Husband's counsel fees of $1,000.00. Husband has requested additional attorney fees, which the Court will address at the time of the final divorce hearing.*

*The Court having issued Orders giving the Wife the opportunity to purge herself of contempt and has admonishing her to comply, still Wife refuses. Accordingly the Court will now issue sanctions which will enforce the Court's Order but again give the Wife an opportunity to purge herself of the Contempt.*

## ORDER

*AND NOW, this 15th day of February 2022, the Wife, Lucinda Prall shall have 30 days to pay to her Husband, Larry Prall the sum of $3,750.00 for his share of the marital truck and an additional $1,000.00 in attorney fees for a total of $4,750.00. Payment shall be made through Husband's counsel.*

*If the Wife fails to pay said money, she shall be incarcerated for a period of 60 days or until she has made said payment whichever occurs first. If payment is not received within said 30 days, Wife shall turn herself in to the Potter County Sheriff to begin serving her incarceration. If Wife does not make said payment and fails to report to the Potter County Sheriff, a bench warrant will be issued for her arrest.*

On February 24, 2023, Wife finally paid the $4,750 through her present counsel.

## DISCUSSION

All property acquired during a marriage and prior to separation is considered "marital property." 23 Pa.C.S.A. sec. 3501 (a). Property acquired prior to the date of marriage is excluded from marital property. 23 Pa.C.S.A. sec. 3501 (a)(1). In addition, any property acquired by either spouse after the parties have separated is non-marital. 23 Pa.C.S.A. sec. 3501 (a)(4). Also, gifts received during the marriage from third parties are likewise excluded. 23 Pa.C.S.A. sec. 3501 (a)(3). However, gifts given from one spouse to the other are marital property. 23 Pa.C.S.A. sec. 3501 (a)(3). As to debts and liabilities incurred prior to separation and during the marriage which are incurred in good faith, the same are likewise to be allocated by the Court between the parties even if the debt is joint or individually acquired. Duff v. Duff,

16

510 Pa. 251, 507 A.2d 371 (1986), (tax liability); Schenk v. Schenk, 880 A.2d 633 (Pa. Super. 2005); Hicks v. Kubit, 758 A.2d 202 (Pa. Super. 2000) (educational loans).

In fashioning an equitable distribution award, the trial court must consider, at a minimum, the eleven factors set forth in 23 Pa.C.S.A. § 3502. These factors require the trial court to consider the relative economic positions of the parties and the nature of the parties' relationship. *Id.* The facts of a particular case mandate how the section 3502 (a)(1-11) factors will be applied. Gates v. Gates, 933 A.2d 102 (Pa. Super. 2007). The factors are not a simple formula; rather they serve as a guideline for consideration. Wang v. Feng, 888 A.2d 882, 887 (Pa. Super.2005).

In valuing marital property, the trial court may consider estimates, inventories, appraisals, and records of purchases submitted by the parties, and is free to accept all, none or portions of the testimony regarding values. Verholek v. Verholek, 741 A.2d 792 (Pa. Super. 1999). Generally, the court is to use the "fair market value" of the asset at the time of hearing in determining the value of assets for equitable distribution purposes. The fair market value is the value which a willing buyer is willing to pay a seller in an arm's length transaction. Rev. Rul. 59-60.

The Court will now address the factors set forth in 32 Pa.C.S.A. 3502 (a)(11). In the matter at hand the parties were married for approximately 34 years and 4 months as of the date of separation. 23 Pa.C.S.A. § 3502 (1). It is the second marriage for both parties. 23 Pa.C.S.A. § 3502 (2). The Court finds that the parties do not have comparable earnings as Wife has Social Security benefits of $1,125 per month while Husband has Social Security benefits of $2,681 as well as a retirement benefit of $599.91. Neither are employable at this time. Both will need to find a permanent residence as the marital residence and camper are no longer available to them. At this point in their lives, due to their ages and/or health related issues, neither party has any

17

ability to acquire assets. They both have Medicare benefits. 23 Pa.C.S.A. § 3502 (3, 4, 5, 6, 7).

Both parties generally contributed to the marital estate as Wife contributed to the purchase of the camper. Husband assumed the majority of the marital debt by paying the mortgage loan payment and loan on the camper since April 2021 which allowed the parties to retain and preserve these assets. He also made repairs to the marital residence and borrowed funds to pay for the repairs.

Much of the marital personal property at the Potter County residence was removed, sold or destroyed by Wife including Husband's premarital personal property. Wife denies removing or selling any marital assets from the residence; however she is not credible as has been proven on previous occasions. Additionally, the Court does not accept Wife's assertions that the four wheeler and lawn tractor were not sold by her. There is a deposit into her solely owned Edward Jones account of $9,797.90 between September and December of 2021 after separation and subsequent to her leaving the marital residence. The Court heard no explanation from her as to where that money was derived from. Fortunately there are the proceeds from the marital residence which can be equitably distributed between the parties. 23 Pa.C.S.A. § 3502 (7, 8, 10, 10.2).

Both parties will suffer some decline in their standard of living after the divorce. Neither are well off and they have minimal income and assets. They struggled financially while married and lived above their means. The Court does not find they enjoyed a significant standard of living. Wife testified that finances were a major issue in their separation and both referenced borrowing from Wife's life insurance policy to pay the lot rent in Florida. Wife testified that she has no funds available to her from her Edward Jones account which was valued after separation

on October 29, 2021 at $28,140. Due to Wife's deception in the hearings, the Court is not convinced that she has spent all of this investment. 23 Pa.C.S.A. § 3502 (8, 9,10,10.1,10.2).

The Court has determined to use the date of separation for value in distribution of some of the fixed assets and debts, and the present value for other assets to do economic justice to the parties.

In addressing the division of the assets, the Court has attempted to equitably divide the assets between the parties. In making this decision the Court has determined the facts based in part upon the credibility of the parties in their respective testimony. The Court has analyzed all the factors set forth in 23 Pa.C.S.A. § 3502 including contributions to the marital estate and the ability to accumulate additional assets. Wife has been uncooperative throughout the proceedings and attempted to make Husband's life difficult. It was a considerable chore to convince her to participate in the proceedings and to comply with any Court Orders.

In summary the Court determines that the marital assets which are subject to distribution is as follows:

- Marital residence proceeds: $80,226.08 (the Court will direct that $5,500 be withheld from the funds to address any deficiency in the sale of the camper).

- Value of the four wheeler and lawn tractor: $4,275.00

- Edward Jones Account: $5,160.00

- Firearms: $2,350.00

- Personal property destroyed or removed by Wife: $11,000.00.

- The marital portion of Husband's retirement account.

- The camper value and camper debt are comparable accordingly they will be

19

treated as a wash for equitable distribution purposes.

The following is the marital debt:

- Wife's Discover Card: $6,800.00 (5/21/2021 statement)

- Husband's loan of $10,000.

- Wife's medical bill is $7,578.53.

In reaching this Order, the Court has considered Husband's Northwest Savings Bank loan of $6,035 for roof repair to preserve the residence as well as his contributions to pay the loan on the marital residence and the camper. One-half of the trade in value for the pickup truck has already been paid to Husband and will not be addressed. Both parties request reimbursement for appraisals, fees and monies they were required to pay during the separation; however, the assets are minimal and to repay said fees and expenses would substantially reduce any funds available in equitable distribution. The Court did however consider the expenditures in reaching a determination as to all marital claims.

As to the claim for alimony the Court has considered the factors set forth in 23 Pa.C.S.A. 3701(b). The purpose of alimony is not to award one party and punish the other, but rather to insure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. In determining the nature, amount, duration and manner of all payment of alimony, the court must consider all relevant factors, including those prescribed for at 23 Pa. C.S. §3701(b). In addition, alimony is based upon the reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payer's ability to pay. Isralsky v. Isralsky, 824 A.2d 1178 (Pa. Super. 2003).

In addressing alimony the Court is mindful that Husband does not have a significant amount of income available to him. His pension election ensured that his spouse would receive

20

the same amount he presently receives and that he received a reduced amount than what he could have received if he made a different election. She is 14 years younger than Husband and all probability he will predecease her and she will receive his 100% survivor election. Husband asserts that Wife's marital misconduct in the nature of physical abuse and evidence of that she is cohabitating with a member of the opposite sex should bar her award of alimony. Considering those matters, the Court will award alimony for a short period of time.

Counsel fees, costs and expenses. Both parties have significant fees and costs. The Wife was able to use her investment to pay fees while Husband was required to borrow to pay his. Due to the limited resources and income of the parties no award will be given.

LUCINDA PRALL
   Plaintiff

   Vs.

LARRY PRALL
   Defendant

:IN THE COURT OF COMMON PLEAS
:OF POTTER COUNTY, PENNSYLVANIA
:
:No. 3529 of 2021
:
:CIVIL DIVISION –DIVORCE
:

## ORDER

AND NOW this 18 day of September 2024 after trial, the Court issues the following relief as to the claims of equitable distribution of assets and liabilities; alimony and counsel fees, costs and expenses:

<u>Equitable distribution of assets and liabilities</u>:

Except as set forth hereafter, each party shall retain all personal property titled in his/her name or in his/her possession and shall be solely responsible for any loan or obligation associated with or secured by the said personal property.

The total marital assets are approximately $103,011.80 excluding Husband's retirement account. Included in the total marital asset figure are the items Wife sold, destroyed or otherwise disposed of which were situated at the marital residence valued at $11,000 and the four wheeler and the lawn tractor valued at $4,272. Wife also disposed of $4,000 of Husband's premarital personal property. Wife will be held accountable for these amounts in the equitable distribution award. The Court will direct that $5,500 be withheld from the proceeds from the sale of the residence of $80,226.08 to pay any shortfall due for the sale of the camper which sale is approved at $56,000. This will leave $74,726.00 held in Attorney Larsen's escrow account available for immediate distribution. Husband shall fully exercise control over the trailer to ensure that it is sold and should Wife refuse to execute any closing documents or title, he may execute the documents in her stead.

22

The Court divides the assets with Wife receiving approximately 55% and Husband receiving approximately 45%. After the camper is sold any remaining proceeds will be distributed in the same percentages. The division of assets and debts is as follows:

Since Wife has disposed of the aforementioned marital property inside the residence as well as the four wheeler and tractor totaling $15,275 she will be accountable for these items and will pay Husband 45% of their value or the sum or $6,873.75. She will also be accountable for entirety of Husband's premarital assets she destroyed valued at $4,000.00. Accordingly Wife owes to Husband for his portion of the marital assets and his premarital assets the total sum of $10,873.75.

Wife will retain the jointly owed Edward Jones account valued at approximately $5,160.37 and Husband shall retain his firearms valued at $2,350.00.

As to the marital debt totaling $24,378.83 Wife shall be responsible for 45% or $10,970.47 while Husband is responsible for 55% or $13,408.56. Accordingly, Husband will be solely responsible for his $10,000 personal loan and shall pay to Wife $3,408.56. Wife shall be solely responsible for her Discover Card of $6,800 and her medical bills of 7,578.53.

Accordingly, Attorney Patrick Larsen is directed to distribute from his escrow account the real estate proceeds of $74,726.00 as follows:

**To Wife 55% :** $41,009.30 (gross amount due)

- $10,873.75 (husband's share of missing marital and premarital property)

+ $3,408.56 (husband's share of marital debt owed to wife)

$33,634.11 (net amount due wife)

23

To Husband 45%:  $33,626.70  (gross amount due)

+ $10,873.75  (husband's share of missing marital and premarital items)

- $3,408.56  (husband's share of marital debt)

$41,091.89 (net amount due husband)

As to that marital portion of the Husband's Tyco Electronic Pension Plan -MF73372 01 Wife shall receive 55% of the marital portion of Husband's monthly benefit, together with any costs of living increases. The Court did not consider Wife's survivorship benefit value which could have reduced this benefit. Husband's attorney shall ensure that an QDRO is prepared to disburse the benefit to Wife with the costs equally shared between the parties.

The parties will execute any and all documents, titles and the like to effectuate the provisions of this agreement.

The parties will indemnify, defend and hold the other harmless from any claims made against the other party for indebtedness to be assumed hereunder.

Alimony:

Alimony will be awarded to Wife in the sum of $300.00 per month for two years which shall terminate in the event of Wife's death, cohabitation with a member of the opposite sex, or remarriage. The first payment will be due 30 days from today's date. In determining the amount of alimony the Court did not consider in the calculation any portion of the Husband's retirement benefit. Spousal/APL has been addressed under a separate Order and will be deemed terminated effective this date after all arrears have been paid by Husband.

Counsel fees, costs and expenses:

Due to the minimal assets and income as discussed above, there will be no award to either party for counsel fees, costs or expenses.

24

**THE DISTRIBUTIONS UNDER THIS ORDER SHALL OCCUR ON OR AFTER 30 DAYS UNLESS AN APPEAL OR MOTION FOR RECONSIDERATION IS FILED AT WHICH TIME NO DISTRIBUTION WILL OCCUR WHILE THE APPEAL OR RECONSIDERATION IS BEING PROCESSED.**

BY THE COURT

STEPHEN P.B. MINOR P.J.

Cc: Lea Ann Heltzel, Esq.

Rita Alexyn, Esq.

Domestic Relations

25

LUCINDA PRALL                    :IN THE COURT OF COMMON PLEAS
         Plaintiff               :OF POTTER COUNTY, PENNSYLVANIA
                                 :
         Vs.                     :No. 3529 of 2021
                                 :
LARRY PRALL                      :CIVIL DIVISION –DIVORCE
         Defendant               :

**DIVORCE DECREE**

AND NOW this 18 day of September 2024 the Plaintiff Lucinda Prall and the Defendant Larry Prall have lived separate and apart in excess of one year, accordingly they are divorced from the bonds of matrimony.

The parties shall reaffirm or change the beneficiary status on any life insurance policies, annuity contracts, pension, profit sharing plans, or other contractual arrangements providing for payment to a spouse if it is the intention of one of the parties to keep or change the other party as a beneficiary. Failure to so may result in revocation of the beneficiary designation pursuant to 20 Pa.C.S.A. sec. 6111.2.

All marital claims have been resolved by Order of even date.

BY THE COURT

STEPHEN P.B. MINOR P.J.

Cc: Lea Ann Heltzel, Esq.

Rita Alexyn, Esq.

Domestic Relations

26